# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TIM DOYLE, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 4:21-CV-00987 |
| MATTHEW FILBERT, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiff*, | § § | Civil Action No. 4:22-CV-00012 |
| LABORERS' DISTRICT COUNCIL and CONTRACTORS' PENSION FUND OF OHIO, Individually and on Behalf of All Others Similarly Situated, | § § § § § § | |
| *Plaintiff*, | § § | Civil Action No. 4:22-CV-00041 |
| v. | § § | |
| REATA PHARMACEUTICALS, INC., J. WARREN HUFF, MANMEET S. SONI, and COLIN J. MEYER, | § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are several competing motions to consolidate, motions to be appointed lead plaintiffs, and motions for approval of lead plaintiffs' selection of lead and liaison counsel (Dkts. #19, #20, #21, and #22 in Case No. 4:21-CV-00987; Dkts. #4, #5, and #10 in Case No. 4:22-CV-00012; Dkts. #13, #14, and #19 in Case No. 4:22-CV-00041) filed in the above-captioned cases. Pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(ii) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PLSRA"), this order addresses solely the issue of consolidation, and the Court reserves ruling

1

on the appointment of lead plaintiffs and approval of selection of lead counsel and liaison counsel for a subsequent order.

Consolidation is sought in each of the above lawsuits by the following plaintiffs and movants:

- Donald Potts ("Potts"), filed on February 19, 2022 (Dkt. #19 in Case No. 4:21-CV-00987).

- UMC Benefit Board, Inc.; US Equity Fund-P Series, a series of the Wespath Funds Trust; US Equity Index Fund-P Series, a series of the Wespath Funds Trust; Wespath Institutional Investments LLC; US Equity Fund-I Series, a series of the Wespath Funds Trust; and US Equity Index Fund-I Series, a series of the Wespath Funds Trust (collectively, "Wespath"), filed on February 18, 2022 (Dkt. #20 in Case No. 4:21-CV-00987) and March 21, 2022 (Dkt. #20 in Case No. 4:22-CV-00012; Dkt. #19 in Case No. 4:22-CV-00041).

- Laborers' District Council; Contractors' Pension Funds of Ohio; International Union of Operating Engineers, Local No. 793; Members Pension Benefit Trust of Ontario; and IBEW Local 353 Pension Plan (collectively, the "Labor Funds"), filed on February 18, 2022 (Dkt. #21 in Case No. 4:21-CV-00987; Dkt. #4 in Case No. 4:22-CV-00012; Dkt. #13 in Case No. 4:22-CV-00041).

- Duane Olcsvary ("Olscvary"), filed on February 23, 2022 (Dkt. #22 in Case No. 4:21-CV-987; Dkt. #5 in Case No. 4:22-CV-00012; Dkt. #14 in Case No. 4:22-CV-00041).

Having reviewed the motions and responses on the issue of consolidation, the Court finds that the motions should be **GRANTED.**

## BACKGROUND

On March 1, 2021, Defendant Reata Pharmaceuticals, Inc. ("Reata") announced that it had submitted a New Drug Application to the U.S. Food and Drug Administration ("FDA") for bardoxolone methyl ("bardoxolone"). If approved, bardoxolone would become "the first therapy specifically indicated for treatment of [chronic kidney disease] caused by Alport's syndrome"

(Dkt. #1 at ¶ 25).[1] But on December 8, 2021, the FDA's Advisory Committee unanimously voted against approval of Reata's application.

The denial came as a shock to Reata's investors. Back in November of 2016, "Reata told investors during an earnings conference call that 'we have received clear guidance from [the] FDA about requirements for approval of bardoxolone [ ] in Alport syndrome'" (Dkt. #22, Exhibit 1 at p. 8). Then in November of 2020, Reata announced that the results of a multi-year study on the efficacy of bardoxolone were "positive," and "represent[ed] the first time that an investigational medicine ha[d] shown a significant clinical benefit in [chronic kidney] disease" (Dkt. #1 at ¶ 20). As far as investors were aware, bardoxolone worked—"the data" provided by Reata "suggest[ed] that bardoxolone treatment ha[d] beneficial long-term effects on kidney function in patients with Alport syndrome" (Dkt. #1 at ¶ 26).

The bigger shock, however, was revealed within FDA briefing documents released on December 6, 2021. In stark contrast to Reata's prior representations, investors discovered that the FDA "had repeatedly voiced concerns about the validity of the study design—specifically, that bardoxolone's pharmacodynamic effect on kidney function would make it difficult to assess the effectiveness of the drug" (Dkt. #22, Exhibit 1 at pp. 8–9). As a result, the FDA "did not believe that the data demonstrated that bardoxolone was effective in slowing the loss of kidney function in patients with Alport syndrome or in reducing the risk of progression to kidney failure" (Dkt. #22, Exhibit 1 at p. 8). The documents further revealed that these concerns were communicated to Reata as early as March 1, 2021. Yet, Reata never attempted to relay these concerns to its investors.

Relying on Reata's representations, investors bought and acquired millions in Reata shares and securities. Wespath "purchased 114,030 Reata shares . . . with a total [ ] expenditure of

---

[1] Unless otherwise noted, all citations to the docket within the Background section come from filings in the first-filed case, Case No. 4:21-CV-00987.

$17,184,758.77" (Dkt. #20, at p. 12); Potts and the Labor Funds purchased 12,000 and 12,289 shares of Reata common stock, respectively (Dkt. #19 at p. 3; Dkt. #21 at p. 6); and Olcsvary invested thousands in Reata securities (Dkt. #22, Exhibit 1 at p. 12). Reata's initial share price on November 10, 2020 closed at $184.62 per share. But after the FDA released its briefing documents, "Reata's stock price plummeted 37%, falling from $78.69 per share to close at $48.92 per share, on unusually heavy trading volume" (Dkt. #21 at p. 9). Then, when the FDA denied Reata's application, shares fell even further "to close at $29.11 per share—down more than 63% from the opening of trading on December 6, 2021," just 48 hours earlier (Dkt. #21 at p. 9).

As a result, millions invested in Reata was now lost, and the value of Reata's shares mere paperweight in comparison to their once respected high. Wespath's losses alone totaled over $10,279,158.72 (Dkt. #20 at p. 12). The Labor Funds "incurred losses of over $662,000" (Dkt. #21 at p. 6), Potts "over $558,766 in losses" (Dkt. #19 at p. 3), and Olcsvary over "$164,171 . . . on his [ ] transactions in Reata securities" (Dkt. #22, Exhibit 1 at p. 12).

Beginning on December 20, 2021, investors filed several class action lawsuits against Reata; Reata's Chief Executive Officer, J. Warren Huff ("Huff"); Reata's Chief Financial Officer Manmeet S. Soni ("Soni"); and Reata's Chief Medical Officer, President, and Chairman of the Board, Colin J. Meyer ("Meyer").[2] Three lawsuits are relevant to the present motion: 4:21-CV-987 filed on December 20, 2021 (the "*Doyle* action"); 4:22-CV-12 filed on January 7, 2022 (the "*Filbert* action"); and 4:22-CV-41 filed on January 20, 2022 (the "*Laborers*' action"). Each lawsuit alleges the same material facts and allegations—that all Defendants violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder; and that individual defendants violated § 20(a) of the Exchange Act. The *Doyle* and *Filbert* actions allege the relevant class period as

---

[2] As defined below, the *Doyle* and *Filbert* actions brought suit against Defendants Reata, Huff, and Soni, and the *Laborers*' action brought suit against Defendants Reata, Huff, and Meyer.

4

between November 9, 2020 and December 8, 2021, and the *Laborers*' action alleges the relevant class period as between November 14, 2016 and December 6, 2021. All lawsuits sue on behalf of persons and entities that purchased or acquired Reata securities or sold Reata options during the alleged class period.

In February and March 2022, the investors filed competing motions to consolidate, motions to be appointed lead plaintiffs, and motions for approval of lead plaintiffs' selection of lead and liaison counsel in all three cases (Dkts. #19, #20, #21, and #22 in Case No. 4:21-CV-00987; Dkts. #4, #5, and #10 in Case No. 4:22-CV-00012; Dkts. #13, #14, and #19 in Case No. 4:22-CV-00041). None of the plaintiffs or movants stand in opposition to consolidation.

## LEGAL STANDARD

Consolidation is appropriate under Federal Rule of Civil Procedure 42(a) where there are actions involving "common question[s] of law or fact." FED. R. CIV. P. 42(a). While consolidation is up to the trial court's discretion, the Fifth Circuit has directed district judges "to make good use of Rule 42(a) in order to expedite . . . trial and eliminate unnecessary repetition and confusion." *In re Air Crash Disaster*, 549 F.2d 1006, 1013 (5th Cir. 1977). Consolidation is thus "a matter of convenience and economy in administration." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 394 (5th Cir. 2004) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933)); *see also Wilson v. Johns-Manville Sales Corp.*, 107 F.R.D. 250, 252 (S.D. Tex. 1985) (stating that the purpose of consolidation is to allow district courts "to manage their dockets efficiently while providing justice for the parties."). However, consolidation should not be granted where "it would prejudice the rights of the parties." *St. Bernard Gen. Hosp. Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983).

Further, the Exchange Act expressly requires the court to enter an order consolidating similar actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) [the appointment of lead plaintiff/lead counsel] until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff for the consolidated actions in accordance with this paragraph.

15 U.S.C. § 78u–4(a)(3)(B)(ii). In applying this provision, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation." *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-4330, 2021 WL 1415900, at *2 (S.D. Tex. Apr. 12, 2021) (internal citations omitted).

## ANALYSIS

In this securities litigation, the Court is persuaded that all plaintiffs and movants assert a right to relief arising out of a common series of alleged transactions and occurrences and that the determination of all the plaintiffs' claims will involve common questions of law and fact. The cases are based upon the same alleged misconduct, allege the same class definition, and assert the same claims. Additionally, each case is brought on behalf of classes of investors who purchased, acquired, or held Reata shares, and "[c]lass action shareholder lawsuits are the quintessential type of cases in which consolidation is appropriate." *Plymouth Cty. Ret. Sys. v. Apache Corp.*, 110 Fed. R. Serv. 3d 1694, at *2 (S.D. Tex. Oct. 6, 2021) (consolidating two securities litigation cases under PLSRA because "[i]t makes no sense to have two separate virtually identical class action lawsuits proceeding simultaneously"); *see also Welch v. Meaux*, No. 19-1260, 2020 WL 4758269, at *1 (W.D. La. Aug. 17, 2020) (in consolidating two securities class actions under PLSRA, stating

"[c]ourts have found that class action shareholder suits are suited for consolidation in order to coordinate discovery, avoid duplication, and minimize expenditures.").

Further, consolidation is not unworkable simply because the *Laborers*' action names different defendants from the *Doyle* and *Filbert* actions—rather, "[t]he fact that a defendant may be involved in one case and not the other is not sufficient to avoid consolidation." *St. Bernard Gen. Hosp.*, 712 F.2d at 989. This is true especially where, despite such differences, "there are also substantial commonalities, and [the cases] involve 'overlapping [d]efendants and a common core of facts and legal issues." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 432–33 (S.D. Tex. 2010) (quoting *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002)). Such is the case here, as all the lawsuits assert claims for violations of §§ 10(b) and 20(a) of the Exchange Act against substantially overlapping defendants. Similarly, the Court may grant consolidation even though the *Laborers*' action alleges a differing class period from the *Doyle* and *Filbert* actions. Differing class periods, without more, "will not defeat consolidation or create a conflict." *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-4330, 2021 WL 1415900, at *2 (S.D. Tex. Apr. 12, 2021) (quoting *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998)); *see also Okla. Law Enf't Ret. Sys. v. Adeptus Health, Inc.*, No. 4:17-CV-00449, 2017 WL 3780164, at *3, *8 (E.D. Tex. Aug. 31, 2017) (granting consolidation despite change in class period). Moreover, while these differences do exist between the cases, the record contains no indication that any party will suffer prejudice from consolidation. To the contrary, consolidation would conserve judicial resources and reduce the time and cost of handling the cases separately.

Under such circumstances, consolidation is appropriate pursuant to Federal Rule of Civil Procedure 42(a). *See In re BP*, 758 F. Supp. 2d at 432–33 (consolidating cases despite "significant differences among the claims in the various cases" because they involved "substantial

7

commonalities" including "overlapping [d]efendants and a common core of facts and legal issues."). Accordingly, the Court finds that consolidation is appropriate in this case.

## CONCLUSION

It is **ORDERED** that Plaintiffs' Motions to Consolidate (Dkts. #19, #20, #21, and #22 in Case No. 4:21-CV-00987; Dkts. #4, #5, and #10 in Case No. 4:22-CV-00012; Dkts. #13, #14, and #19 in Case No. 4:22-CV-00041) are **GRANTED**. Therefore, Case Nos. 4:21-CV-00987, 4:22-CV-00012, and 4:22-CV-00041 are ordered consolidated, to be held before Judge Amos L. Mazzant under Case No. 4:21-CV-00987.

The Clerk of the Court and Counsel are directed to docket all future filings in the above-listed matters under Case No. 4:21-CV-00987.

**IT IS SO ORDERED.**

SIGNED this 22nd day of April, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE